UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GLORIA JONES SCOTT

VERSUS

HARTFORD LIFE AND ACCIDENT
INSURANCE CO., ET AL

CIVIL ACTION

NO. 09-912-JJB-SR

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Hartford Life Insurance Company and Affinion Benefits Group, L.L.C.'s joint motion (doc. 31) for summary judgment and Merrick Bank Corporation's motion (doc. 32) for summary judgment. Plaintiffs have filed an opposition (doc. 36), to which Hartford Life Insurance Company and Affinion Benefits Group, L.L.C. filed a joint reply (doc. 45) and to which Merrick Bank Corporation filed a reply (doc. 40). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

The following facts are undisputed. Defendants Merrick Bank Corporation ("Merrick") and Affinion Benefits Group ("Affinion") are parties to a marketing agreement in which the two agree to market insurance programs, including programs offered by Hartford Life Insurance Company ("Hartford"), to Merrick's Visa and MasterCard credit card customers[1] (doc. 36, ex. A, p. 12; ex. B, pp. 21,

---

[1] The solicitation materials contain Merrick's logo and name prominently (doc. 36, ex. F). The letters state that Merrick provides "$1,000 of Accidental Death & Dismemberment (AD&D) insurance coverage, *paid for you* by Merrick Bank" (doc. 36, ex. F) (emphasis in original). The letters also invite customers to add an additional $300,000 in coverage by submitting an enclosed form (doc. 36, ex. F). The letters state that the "opportunity is available through The Hartford, in conjunction with Merrick Bank" and are signed by Merrick's President and CEO and a Merrick agent (doc. 36, ex. F). The activation forms included in

1

28; ex. C, pp. 149-82). Under the agreement, Merrick receives a fee for each of its customers that signs up for insurance, Affinion administers the billing and collection of premiums and distributes solicitation materials to Merrick's customers and receives a portion of the customers' premiums in return, and Hartford receives the remaining portion of the customers' premiums (doc. 36, ex. A, pp. 18, 21-22, 57; ex. B. p. 22; ex. C, pp. 157, 164, 177, 181).

Plaintiff Gloria Scott ("Scott") maintained a Visa credit card issued by Merrick and received materials offering her $1000 of free coverage from Merrick and the option of purchasing an additional $300,000 of insurance through Harford (doc. 32, ex. A, ¶ 6). On March 28, 2007, Scott filled out and submitted the materials under the belief that Affinion would automatically charge her Merrick account for the premium (doc. 36, ex. K., ¶¶ 4, 6). In April 2007, Scott

---

the letters require those interested in the additional coverage to authorize "Merrick Bank and its service provider to *automatically charge* [their] account[s] quarterly" (doc. 36, ex. F) (emphasis added). In addition, the words "Additional Coverage – Send no money" appear above a section containing multiple boxes corresponding to the amount of coverage the customer seeks (doc. 36, ex. F). However, the materials go on to state that

> Merrick Bank Corporation and Affinion Benefits Group are independent contractors and are not affiliated entities. Affinion assumes all responsibility for this program. Merrick Bank has no responsibility for and makes no representations with respect to Affinion or its products or services. Merrick Bank is not liable for any damages resulting from the provision of, or failure to provide benefits or services.

(doc. 36, ex. F).

Because Merrick is prohibited by Federal law from disclosing its customers' account numbers to solicitors like Hartford and Affinion, Merrick provides encrypted account numbers to third-party institutions who then match the encrypted numbers with the corresponding customers, thereby enabling Affinion to directly withdraw funds from the customers' accounts (doc. 36, ex. A, pp. 15, 17; ex. B, pp. 24-32).

received a letter from Hartford enclosing her certificate of insurance[2] (doc. 32, ex. Scott 2).

In January 2008, Scott lost her original Merrick credit card ("Card 2980"), contacted Merrick, and was issued a new card ("Card 9514") (doc. 32, ex. K, ¶ 9; ex. B, pp. 39-41, 48-49, 53, 55). In February 2008, Affinion attempted to charge Card 2980, but was denied[3] (doc. 32, ex. B, p. 108:18-25). On February 18, 2008, Affinion sent Scott a notice stating that her February premium had not been paid and that coverage would lapse if payment was not received by April 3, 2008 (doc. 32, ex. B, pp. 49:5, 99:21-25). Again on May 5, 2008, Affinion attempted to charge Scott's account for the premiums, but was denied, and on May 19, 2008, Affinion notified Scott that she was without coverage and that coverage would not be in effect unless Affinion received payment by July 3, 2008 (doc. 32, ex. B, pp. 49:5, 100:1-4). Scott disputes that she ever received the notice (doc. 32, ex. K, ¶ 12).

Scott's husband, Kevin Todd Scott, died from an accidental prescription-drug overdose on July 26, 2008 (doc. 32, ex. K, ¶¶ 4, 8). In August 2008, Scott

---

[2] The letter stated that her coverage would remain in effect as long as her premiums were timely received and stated that "*Merrick Bank has made arrangements* for [her] quarterly premiums of $148.50 to be charged to [her] credit card account during the first week of: May, August, November, February" and requested that Scott ensure she had adequate funds in her account to cover the cost of the premiums (doc. 32, ex. Scott 2) (emphasis added). The certificate of insurance stated that "[p]remiums will *automatically* be charged to [her] credit card account the first week of each quarter" (doc. 32, ex. Scott 3) (emphasis added).

[3] Under the joint agreement between Affinion, Hartford and Merrick, there is no procedure in place to provide Affinion and/or Hartford with a customer's new credit card information, and the result is that in the event that a customer was issued a new credit card, the customer bears the burden of notifying the parties that its old card number is no longer effective or risks having its coverage lapse (doc. 32, ex. A, pp. 43, 67, 73-75, 81, 100, 115-16, 118; ex. B, pp. 26, 32, 70, 78, 83-85, 90).

submitted her claim, which Hartford denied on December 3, 2008 (doc. 32, ex. K, ¶ 12; ex. Scott 7). On July 19, 2009, Scott sent a letter to Hartford appealing its decision, but was again denied in a letter dated August 24, 2009 (doc. 32, ex. Scott 8; ex. Scott 9). Hartford claimed that it had unsuccessfully attempted to collect payments in February and May, 2008 (doc. 32, ex. Scott 9).

On October 22, 2009, Plaintiff filed suit against Defendants (doc. 1). Against Hartford, Plaintiff asserts claims for breach of contract for failing to honor her claim (doc. 1). Against Affinion, Plaintiff asserts claims for (1) negligence for failing to use reasonable care in collecting her premiums (2) detrimental reliance for relying on Affinion to automatically collect her premiums (doc. 1). Against Merrick, Plaintiff asserts claims for (1) negligence for failing to use reasonable care in automatically charging her premiums to her new credit card account; (2) breach of contract for failing to automatically charge her premiums; (3) detrimental reliance for relying on Merrick to automatically charge her premiums (doc. 1).

On October 15, 2010, Affinion and Hartford filed a joint motion (doc. 31) for summary judgment. Affinion and Hartford claim that summary judgment is proper because Affinion attempted to, but was unable to charge Plaintiff's Merrick account in February and May 2008 and therefore fulfilled any duties it may have had to Plaintiff (doc. 31).

On October 18, 2010, Merrick filed a motion (doc. 32) for summary judgment. Merrick asserts that it is entitled to summary judgment as to (1)

4

Plaintiff's breach of contract claims because Plaintiff cannot point to any contractual provision which Merrick has breached and because Plaintiff agreed to hold Merrick harmless for any damages arising out of services provided by third-parties; (2) Plaintiff's negligence claims because it had no duty to automatically charge her account for the premiums or to inform third-party providers of a change in her account number; and (3) Plaintiff's detrimental reliance claim because Plaintiff has not identified any statement made by Merrick upon which she detrimentally relied (doc. 32). Merrick also asserts that Affinion and Hartford were exempt from providing Plaintiff with notice that her insurance coverage had lapsed (doc. 32).

On November 11, 2010, Plaintiff filed an opposition (doc. 36) to Affinion, Hartford and Merrick's motions. As to her breach of contract claims, Plaintiff asserts that (1) Affinion, Hartford and Merrick, as a joint enterprise, represented to her that they would automatically charge and/or collect her premiums in accordance with the solicitation materials (doc. 36); (2) neither Affinion nor Hartford were exempt from providing her with notice of cancellation and that Affinion and Hartford failed to provide adequate notice that her coverage was being cancelled (doc. 36). As to her negligence claims, Plaintiff asserts Affinion and Merrick owed her a duty to charge and/or collect the premiums in a reasonable manner or to notify her if they could not do so (doc. 36). As to her detrimental reliance claims, Plaintiff claims that she relied on statements

contained in the solicitation materials that Affinion and Merrick would automatically charge and/or collect her premiums (doc. 36).

On November 22, 2010, Merrick filed its reply (doc. 40). Merrick asserts (1) its responsibilities to Plaintiff are governed exclusively by the cardholder agreement which does not discuss Merrick's automatically making payments to third-parties and states that Plaintiff agrees to hold Merrick harmless for any damages arising out of services provided by third-parties; (2) Plaintiffs "joint enterprise" theory is without merit; and (3) that Plaintiff has failed to provide affirmative proof that she did not receive Affinion's lapse/cancellation notices (doc. 40).

On November 24, 2010, Affinion and Hartford filed their reply (doc. 45). They assert that (1) Affinion complied with the terms of the solicitation materials by attempting to charge Plaintiff's credit card, but that the charges were not honored; (2) they owed no duty to Plaintiff to ensure that her premiums were collected; (3) they were not required to provide notice of cancellation and, nonetheless, provided adequate notice; and (4) they made no representations upon which Defendant detrimentally relied.

Summary Judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could return a judgment for the non-moving party based on the

evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the movant does bear the burden of proof on an issue at trial, the moving party may establish that there is no genuine issue of material fact by demonstrating the non-moving party lacks evidence necessary to support its claim.  *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).  Once the movant does so, the burden shifts to the non-movant to set forth specific facts showing there is a genuine issue of material fact for trial.  *Liberty Lobby*, 477 U.S. at 242.

**Breach of Contract**

Merrick asserts that (1) the solicitation materials sent by Affinion did not create any contractual obligations as between Merrick and Plaintiff and so it Merrick was not obligated to ensure that Plaintiff's premiums were charged to her Merrick account; and (2) the parties responsibilities are governed exclusively by the cardholder agreement in which Plaintiff agrees to hold Merrick harmless for any action arising out of services provided by third-parties (doc. 32).  Affinion and Hartford (1) deny that the solicitation materials created contractual obligations; and (2) assert that that even if the solicitation materials did create contractual obligations, they complied therewith by attempting to charge Plaintiff's Merrick account for her February and May 2008 premiums (doc. 31).

Plaintiff asserts that the Affinion, Hartford and Merrick were engaged in a joint enterprise in which they agreed to and represented to Plaintiff that they would arrange for her premiums to automatically be paid by Merrick and collected by Affinion, and that the solicitation materials created obligations on the

7

part of Affinion and Merrick (doc. 36). Plaintiff also asserts that Hartford did not properly notify Plaintiff of its cancellation of her policy, and that her policy was therefore still in effect when her claim was denied (doc. 36).

In response, Merrick asserts that it was not required to notify Plaintiff that her policy had been cancelled (doc. 40), and Affinion, Hartford and Merrick assert that Plaintiff has not provided adequate evidence to demonstrate that she did not receive such notice (doc. 45).

To establish a claim for breach of contract, the plaintiff must point to an identifiable contractual promise that the defendant failed to fulfill. *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002). A financial institution only owes its customers the duty of complying with the contract between it and the customer. La. Rev. Stat. § 6:1124. Furthermore,

> Under Louisiana law, a contract is the law between the parties, and is read for its plain meaning . . . . [W]here the words of a contract are clear and explicit and lead to no absurd consequences, the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence . . . . This established rule of strict construction does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties.

*In re Lilgeberg Enters., Inc.*, 304 F.3d 410, 439-40 (5th Cir. 2002).

When an insurer defends a breach of contract claim, its refusal to recognize a claim on the grounds that the party's policy has been cancelled, the

8

insurer bears the burden of establishing facts which relieve or limit its liability. *Skipper v. Fed. Ins. Co.*, 116 So. 2d 520, 524 (La. 1959). For cancellation for non-payment of premiums to be effective under Louisiana Revised Statute section 22:987(A)(5), the insurer must mail or deliver written notice "stating when, not less than ten days thereafter, such cancellation shall be effective." *But see* La. Rev. Stat. § 22:887(E) (stating that an insurance provider is exempt from providing notice of cancellation if the parties' contract "[does] not contain a provision for cancellation prior to the date to which premiums have been paid"). "The affidavit of the individual making or supervising [the] mailing, shall constitute prima facie evidence of such facts of the mailing." La. Rev. Stat. § 22:887(C).

However, under Louisiana law, there is a strong public policy that the insured receive adequate prior notice before their insurance is cancelled in order that they might be afforded time to obtain new coverage. *Broadway v. All-Star Ins. Corp.*, 285 So. 2d 536, 539 (La. 1973). In furtherance of this policy, courts have also required evidence that the insured actually received the notice of cancellation for it to be effective. *See id.* (finding that, because of the public policy behind notice of cancellation, the insured must also receive the notice for it to be effective); *Skipper*, 116 So. 2d. at 524 (stating that defendant insurance company's compliance with § 22:887 establishes only a rebuttable presumption of notice). Moreover, the insured may create a genuine issue of material fact and avoid a grant of summary judgment by attesting that he or she did not in fact receive the notice. *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co.*,

9

2008 WL 2388682, at * 3 (E.D. La. 2008); *Collins v. State Farm Ins. Co.*, 997 So. 2d 51, 59 (La. Ct. App. 4th Cir. Oct. 14, 2008).

The Court finds that there are no genuine issues of material fact as to Merrick's obligations to Plaintiff. The cardholder agreement which she entered with Merrick provides that her use of the credit card constituted acceptance to the terms of the agreement (doc. 32, ex. A, ¶ 7). Plaintiff can point to no provision in the agreement requiring it to automatically charge her account for the premiums. Moreover, the cardholder agreement states that Plaintiff agrees to hold Merrick harmless for all damages arising out of services provided by third-parties[4] (doc. 32, ex. A).

Moreover, the Court finds that Merrick is entitled to prevail as a matter of law. The parties contract is clear and unambiguous and therefore may not be supplemented by extrinsic evidence. *In re Lilgeberg Enters., Inc.*, 304 F.3d at 439-40. In addition, Plaintiff can point to no contractual provision obligating Merrick to charge the premiums to her account, and without pointing to a specific contractual provision which Merrick allegedly breached, Plaintiff's breach of contract claim must fail. *Louque*, 314 F.3d at 782. Therefore, the Court will GRANT Merrick's motion (doc. 32) for summary judgment as to Plaintiff's breach of contract claim.

---

[4] The cardholder agreement provides that "[f]rom time to time your Card may include various additional features, services and enhancements . . . . [Merrick] is not liable for these features, services and enhancements, and such features, services or enhancements are the sole responsibility of the third party provider. You agree to hold [Merrick] harmless from any claims, actions or damages resulting from your use of any of these features, services or enhancements, when permitted by applicable law" (doc. 32, ex. A).

However, the Court finds that there are genuine issues of material fact which preclude a grant of summary judgment as to Affinion and Hartford. Plaintiff's policy states that coverage "terminates on the earlier of (a) the date the Policy is terminated . . . or (d) the Premium Due Date on which you fail to pay any required premium for Voluntary Benefits subject to the Individual Grace Period Provision" of thirty-one days (doc. 36, ex. Scott 3). Because the contract contains a provision for cancellation at whatever "date the policy is terminated," Affinion does not qualify for the § 22.887(E) exemption, and would have to have properly notified Plaintiff for her coverage to have lapsed. La. Rev. Stat. § 22:987(A)(5). Affinion has provided affidavits stating that it mailed notice of cancellation in compliance with Louisiana Revised Statute section 22:887(C) (doc. 32, ex. 4). Affinion claims that in February and May 2008, it sent Plaintiff letters informing her that her premiums were past due, and that her coverage would lapse if her premiums were not paid by April 3 and July 3, 2008, respectively (doc. 32, ex. B, pp. 49:5, 99:21-100:4). However, Plaintiff denies she ever received a notice of cancellation and claims that the February and May 2008 notices, had she received them, would not have adequately informed her of her responsibilities because the documents contained no reference to Merrick and a scant reference to Hartford (doc. 32, ex. K, ¶¶ 11, 12). Therefore, genuine issues of material fact remain as to whether Plaintiff ever received notice of cancellation, *Aunt Sally's*, 2008 WL 2388682, at * 3, and so the Court will DENY

Affinion and Hartford's motion (doc. 31) motion for summary judgment as to Plaintiff's breach of contract claims.

**Negligence**

Plaintiff asserts that Affinion and Merrick failed to use reasonable care in collecting and charging her premiums, respectively, thereby causing her coverage to lapse (doc. 1). Plaintiff also asserts that Merrick failed to use reasonable care in informing Affinion of her new account number (doc. 1).

Affinion asserts that it used reasonable care in collecting Plaintiff's premiums insofar as it attempted to collect the premiums from Merrick, but was denied (doc. 31). Merrick asserts that it owed no duty to automatically deduct the premiums from Plaintiff's account or to inform third-parties that her account number had changed (doc. 32).

Plaintiff asserts Affinion and Merrick, by virtue of the statements made in the solicitation materials, owed her a duty to charge and/or collect the premiums in a reasonable manner or to notify her if they could not do so (doc. 36).

The question of whether a duty exists is a question of law for the court to decide based on the circumstances. *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 321-22 (La. 1994). Generally, a financial institution only owes its customers the duty of complying with the contract between it and the customer in good faith and fair dealing. La. Rev. Stat. § 6:1124; *Matthews v. Bancorpsouth Bank*, 2010 WL 797790, at * 6 n.13 (M.D. La. 2010).

The Court finds that there are no genuine issues of material fact. On March 28, 2007, Scott filled out and submitted the materials necessary to receive accidental death or dismemberment insurance from Affinion (doc. 36, ex. K., ¶¶ 4, 6). Those materials contained statements suggesting that Plaintiff's premiums would be automatically deducted from her Merrick account. (doc. 36, ex. A, p. 12; ex. B, pp. 21, 28; ex. C, pp. 149-82). In January 2008, Scott lost her original Merrick credit card and was issued a new card (doc. 32, ex. K, ¶ 9; ex. B, pp. 39-41, 48-49, 53, 55). In February and May 2008, Affinion attempted to charge Plaintiff's old account and was denied (doc. 32, ex. B, p. 100:1-4, 108:18-25).

The Court also finds that the Defendants are entitled to prevail as a matter of law. Even assuming, arguendo, that Defendants owed Plaintiff a duty to automatically charge and/or collect her premiums by virtue of the language contained in the solicitation materials, Plaintiff is asking the Court to recognize the additional duties that (1) Merrick notify each of Plaintiff's third-party service providers in the event that her account number changed; and (2) that Affinion contact Merrick—in the event that a charge was denied—to uncover the reason for denial and to obtain her new account number. Plaintiff has cited, and the Court cannot find any jurisprudence supporting this additional duty. Therefore, the Court will GRANT Affinion and Hartford's motion (doc. 31) and Merrick's motion (doc. 32) for summary judgment as to Plaintiff's negligence claims.

**Detrimental Reliance**

Plaintiff claims that she detrimentally relied on Merrick's and Affinion's representations made within the solicitation materials that they would automatically charge and/or collect her premiums (docs. 1 & 36).

Merrick claims that it has not made any representations upon which Plaintiff relied and that her reliance on any representations would not be reasonable because they would contradict the language contained in the cardholder agreement (doc. 32). In addition, Affinion claims that it made no representations upon which Plaintiff could reasonably rely (doc. 45).

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his representations. *Barnett v. Saizon*, 994 So. 2d 668, 674 (La. Ct. App. 1st Cir. 2008). To state a claim for detrimental reliance, a plaintiff must establish that (1) the defendant made a representation by word or conduct; (2) the plaintiff reasonably relied on the representation; and (3) the plaintiff changed its position to its detriment in reliance on the representation. La. Civ. Code art. 1967. A cause of action for detrimental reliance does not depend upon existence of valid, enforceable contract. *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Prot. Sys. Co.*, 915 F. Supp. 818 (M.D. La. 1995), aff'd 102 F.3d 550 (5th Cir. 1996). In determining the reasonableness of a party's reliance, Louisiana courts take into account the factual circumstances surrounding the reliance, including the business acumen of the parties. *Water Craft Mgmt., L.L.C. v. Mercury Marine*, 2004 WL 3244168 (M.D. La. 2004), *aff'd* 457 F.3d 484 (5th Cir. 2006). Some Louisiana courts have

found a party's reliance to be unreasonable as a matter of law when the parties have a valid contract defining their rights and limiting the ways the contract may be modified. *Drs. Bethea, Moustoukas, and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 404 (5th Cir. 2004). Though a court may grant summary judgment as to a claim for detrimental reliance, the reasonableness of a party's reliance is a matter best addressed at trial. *Cenac v. Hart*, 741 So.2d 690, 696 (La. Ct. App. 3d Cir. 1999).

The Court finds that there are no genuine issues of material fact. The solicitation materials sent by Affinion contain Merrick's logo and name prominently (doc. 36, ex. F). The letters state that the "opportunity [for up to $300,000 in accident insurance] is available through The Hartford, in conjunction with Merrick Bank" and are signed by Merrick's President and CEO and a Merrick agent (doc. 36, ex. F). The activation forms included in the letters require those interested in the additional coverage to authorize "Merrick Bank and its service provider to *automatically charge* [their] account[s] quarterly" (doc. 36, ex. F) (emphasis added). In addition, the words "Additional Coverage – Send no money" appear above a section containing multiple boxes corresponding to the amount of coverage the customer seeks (doc. 36, ex. F). In April 2007, Scott received a letter from Hartford enclosing her certificate of insurance (doc. 32, ex. Scott 2). The letter stated that her coverage would remain in effect as long as her premiums were timely received and stated that "*Merrick Bank has made arrangements* for [her] quarterly premiums of $148.50 to be charged to [her]

credit card account during the first week of: May, August, November, February" and requested that Scott ensure she had adequate funds in her account to cover the cost of the premiums (doc. 32, ex. Scott 2) (emphasis added). In addition, the certificate of insurance stated that "[p]remiums will *automatically* be charged to [her] credit card account the first week of each quarter" (doc. 32, ex. Scott 3) (emphasis added).

Additionally, the Court finds that Defendants are not entitled to prevail as a matter of law. Defendants made numerous representations to the effect that Plaintiff's premiums would be charged automatically, and that Plaintiff, therefore, need not take any action to ensure that her premiums were paid. Moreover, Plaintiff relied on these statements in choosing to forgo making payments to Affinion. The crux of Plaintiff's claim for detrimental reliance, therefore, is the reasonableness of her reliance. Because Plaintiff is not a sophisticated business actor, a reasonable jury could conclude that her reliance on Defendants' representations was justified under the circumstances. *Cenac*, So.2d at 696. Therefore, the Court will DENY Affinion and Hartford's motion (doc. 31) and Merrick's motion (doc. 32) for summary judgment as to Plaintiff's claims for detrimental reliance.

## **CONCLUSION**

Accordingly, the Court hereby GRANTS Affinion and Hartford's motion (doc. 31) for summary judgment, in part, as to Plaintiff's claims for negligence and DENIES the motion, in part, as to Plaintiff's claims for breach of contract and detrimental reliance. The Court also GRANTS Merrick's motion (doc. 32) for summary judgment, in part, as to Plaintiff's claims for breach of contract and negligence and DENIES the motion, in part, as to Plaintiff's claims for detrimental reliance.

Signed in Baton Rouge, Louisiana this 11th day of January, 2011.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**